Thank you. Good morning. May it please the Court. I am Rachel Wolitzer, representing Appellant, the United States. The District Court determined that the trust and lien claims in the complaint in this case were precluded under race judicata by the Bankruptcy Court's decision to deny the government's disgorgement motion in the CPS bankruptcy case. The professionals Schafer and Weiner and Harmon Partners also argued that the fees decision was race judicata. On appeal, the professionals make the new argument that the order dismissing CPS's bankruptcy case precluded the government's claims. I will first address whether the disgorgement and fees decisions precluded the government's claims, and then I will address whether the dismissal order precluded the claim. Could you flip that actually and talk about dismissal first? Sure. Yes, Your Honor. Because I'm kind of confused. Why weren't these claims brought in the bankruptcy proceeding? Because it seems like you have an argument that they couldn't have been brought in the Well, our argument that they couldn't have been brought was focused more on the post-dismissal claims because there was no jurisdiction after dismissal. Yeah, but I want to talk about before dismissal. What's your argument as to why they couldn't be brought in the bankruptcy proceeding itself? Yes, I understand. So, and this was a new argument that the professionals raised on address this. It goes to the nature of bankruptcy, race judicata, how race judicata fits in the context of a bankruptcy case. A bankruptcy case is kind of the main bankruptcy case is kind of a big umbrella case. Within that case are all sorts of different contested matters, adversarial proceedings with various levels of formality. Adversarial proceedings are governed almost entirely by the federal rules of civil procedure, which are incorporated by federal rules of bankruptcy procedure. Contested matters, which are initiated by motion, are subject to some of the federal rules of civil procedure, but are somewhat less formal. So there are all these smaller matters within the larger bankruptcy case. There is no generally applicable requirement that all non-bankruptcy claims between creditors must be brought in the bankruptcy case. So here, the trust and lien claim... But they could have been brought. Actually, the lien claims could not have been brought during the bankruptcy case. And why not? The government's claim to enforce its federal tax liens. Because the liens, as they attached to, they were pre-petition liens, and the property, the funds, were post-petition property, and the automatic stay prevented the federal tax liens from attaching to the post-petition property. Once the case was dismissed, then the lien... But the post-petition property consisted of property that had been pre-petition property. Is that not correct? No. The post-petition property were the trust funds on the, basically the wages paid to the employees during the post-petition period. So the funds at issue are post-petition funds. These are funds that represent net wages that were paid to CPS's employees without paying the trust fund taxes on them. But these are the funds that the IRS now says belong to them, or should, must be turned over to them, right? Correct. These are the funds. What's the impact of the fact that you appealed the bankruptcy court's decision to the district court, and the district court took it a step further and said, IRS doesn't get these funds? Those, okay, those appeals were the appeals of the motion denying disgorgement, and the government's reconsideration motion that it brought in the appeal of the fees decision. Right. So what's the impact of what the district court said, which was, I mean, the district court, as I read the district court's opinion, decided that the IRS doesn't get those funds. Actually the bankruptcy court decided that because the case had been dismissed, it wasn't pertinent to decide who got the funds. The bankruptcy court held that it didn't have jurisdiction. I know what the bankruptcy court, I'm trying to get to the fact that when that was appealed, I'm not wrong that that was in fact appealed. Yes, your honor. And that in fact then went to the district court. Is it not the case that the district court then, stepping beyond what the bankruptcy court had actually done, the district court said that the IRS doesn't get those funds? The district court was just a court of review of what the bankruptcy court said. But you didn't ever appeal what the district court said. We did appeal and then we withdrew our appeal, but the district court's opinions really aren't pertinent because even this court only reviews the bankruptcy court's opinion. Well, if it were on appeal to us, that's what we would do, but it isn't on appeal to us. That's not what's before us. Well, what's before you, your honor, is respectfully the preclusive effect of the bankruptcy court's decision. So your view is that because the bankruptcy court's decision was appealed to the district court, the district court handed down a decision which was not appealed, that the district court's opinion doesn't have any finality? It's not a question of finality. It's a question of looking at which decision is being used to preclude the government's claims in this case. And I'd like to point out that those are district court orders that have nothing to do with the trust and lien claims in this case. The disgorgement decision was a decision denying the government's motion to disgorge the fees. But this was based on bankruptcy law. It was based on Section 507 of the Bankruptcy Code, which requires equal pro rata treatment of administrative claims in bankruptcy. And that is why the government filed the motion, which these kind of claims can be filed after dismissal because they arise under the Bankruptcy Code, and the government filed the motion to disgorge the fees under the Bankruptcy Code. The Bankruptcy Court said, well this case is over, I don't really need to get to that, and the Bankruptcy Code priority scheme doesn't apply because the case has been dismissed. And the Bankruptcy Court specifically invited the government to pursue its claims in the case. The disgorgement decision said it had no hesitation in encouraging the IRS to avail itself of all remedies available to it under applicable non-bankruptcy law because of the failure of CPS to pay withholding and employment related taxes. The court also said it fully expects the IRS to seek and obtain in an appropriate non-bankruptcy form all of the remedies that the Internal Revenue Code and federal law provide against the offending parties. So it's important to recognize the distinction between the cases, the issues decided in the disgorgement decision, which the district court and the parties seek to rely on to preclude the current claims, and the current claims. The current claims are internal revenue claims. The trust claim is under 7501 of the Internal Revenue Code. The lien claim is under 6321, the lien statute. Those are not bankruptcy claims. They're between the attorneys, the professionals, and the government. They don't involve the debtor. And they really don't, they definitely don't relate to the bankruptcy. And there's no bankruptcy, because the bankruptcy didn't have jurisdiction over those claims. It couldn't decide them after dismissal. And the reason we shouldn't be precluded based, yes? So one of the questions I think that we have is, well, why not bring them before the case was dismissed when you knew that money was being paid to these two entities and that the dismissal, I think, was on your motion. Well, not yours, I guess. But you knew what was happening, and the question is, why weren't these issues raised when the court could have reserved them? Okay. Raised judicata requires the party invoking it to prove that the claims should have been raised in the prior proceeding. So for the most part, it could have been raised. Okay. If you look at the language of the test. There's a difference between could and should. Right, Your Honor. That's a great point. The test says should. If you look at the test for raised judicata, it says should. Whether the claims were or should have been raised. Now, for the post-dismissal claims, we focused on could, because should, of course, requires that you could have brought them. You can't say you should have brought them if you couldn't have brought them. But should is important during the bankruptcy proceeding itself because you're saying it was a discretionary decision by the IRS whether or not they brought their claims in the bankruptcy. Exactly. And because they had the discretion, the rules of raised judicata shouldn't preclude them from bringing the claims later. Except for the lien claims, as I said. The lien claims they could not have brought during the bankruptcy. The trust claims they could have brought during the bankruptcy, but they didn't have to. I'm a little confused because I understand that you're trying to make us understand that bankruptcy is different and it causes an umbrella and you have all these different potential claims. But if you have a situation where, you know, if you have a situation where, you know, the bankruptcy is different, it doesn't sound like, you know, that it really was an exercise of discretion because you tried to get that relief. It wasn't the same relief, Your Honor. It was completely different relief. The relief that we sought, well, actually, we didn't seek the relief before dismissal. We sought the relief after. So if we're getting back to after. That you, it wasn't like, oh, we're not going to try to get this relief in bankruptcy court, et cetera, you know, in our discretion. You try, I understand it was a different, a different assertion, but it is something you tried to get from the bankruptcy court. So is the difference between saying we're entitled to our pro rata share of that money that you're holding, is that so different from saying we're not entitled to any of this money? It is, Your Honor, because of the jurisdictional basis for those claims. So the disgorgement claims, the jurisdictional basis for that claim was 1334B's arising under jurisdiction. The claims arose under Section 507 of the Bankruptcy Code and that section's requirement of equal pro rata treatment. So that's why those claims could be brought after the bankruptcy was dismissed because there was no requirement of a nexus or relationship to the administration of the bankruptcy case as there was for the related trust and lien claims if they had, if the government had tried to bring those after dismissal. So what about the difference between, I don't think anybody would say that you're barred from going after the debtor for the taxes, but that's not what you're doing. You're going after this fund. Correct, Your Honor, because the professionals accepted payments from the debtors, which were really from government trust funds. So the professionals accepted government trust funds under 7501 of the Internal Revenue Code during the bankruptcy case and those trust funds, they're also impressed with the federal tax liens. So that gives us the right to go after the professionals because they have, well, they have, presumably they have possession of the funds, but the government has the real interest in the funds arising from this trust But that strikes me as something that you would pursue in the bankruptcy court because that's how they got the funds, under the jurisdiction of the bankruptcy judge. They couldn't have pursued the lien claims in the bankruptcy, as I said, Your Honor, because the automatic stay prevented the enforcement of the liens against post-petition property, which the funds were. So we could not have brought . . . In court, I guess I know it's circular, but once you knew that the lawyers had these funds that you think they shouldn't have had and that they got them as bankruptcy fees, why would you not, and you knew the case was going to be dismissed, why would you not have raised it before the bankruptcy judge? We did raise it, Your Honor. As soon as we found out, we raised it at the bankruptcy, at the dismissal hearing, and we asked the judge . . . I'm sorry, it was already dismissed, but . . . No, it wasn't, Your Honor. It was at the dismissal hearing. We asked the judge, as part of the The attorneys, of course, objected, so the judge gave the government and the parties time to work out an order that would address new claims that had been raised by the professionals seeking to have their fee claims decided and then claims by the government in response to those that we should be allowed to have a prorouted portion of those funds disgorged. So during the bankruptcy, before the dismissal order was entered, we had raised the issue of disgorgement, and then after dismissal of the bankruptcy, we filed a formal motion. I'm sorry. When you raised the issue before dismissal, was it they got more than their fair share, or was it they should not have this money because the debtor didn't pay any of the taxes and this is really the government's money? At the hearing and in our motion for disgorgement, we based it on the prorouted share, which was a bankruptcy code claim under 507 of the bankruptcy code. So those were bankruptcy claims, and that's why we could make those under a rising under jurisdiction under 1334, 28 U.S.C. 1334B, we could make those claims after dismissal. See, it's important to get back to the... Okay. I'm sorry. I'm trying to understand something, and I may be missing what you're saying. I understand what happened after dismissal, but I heard you say that you raised the issue before dismissal, and then I asked whether, and I think you're saying that the issue you raised before dismissal was the fair share argument. Yes, Your Honor. Okay. So my question regarding that problem is, if you raised it before dismissal and the court made you a briefing schedule and then decided that you can't get your PD because it's been dismissed, did you appeal that ruling on the basis that it had been reserved? At that time, we were not making our trust and lien claims, Your Honor. I didn't ask you that. I'm asking you about the fair share argument. Did you challenge the fact that it was, in fact, preserved, and then the judge refused to address it? Oh, the bankruptcy court didn't rule on it on the grounds that it hadn't been preserved. The bankruptcy court basically just said, this case has been dismissed. I'm not going to rule on priorities. I'm not going to rule on bankruptcy code issues because the case is over. Okay. But that doesn't apply to things that have been preserved, right? It's not really an issue of preserving or not preserving, Your Honor, because the court, we didn't raise the trust and lien claims then, and the bankruptcy court didn't rule on them, and the bankruptcy court didn't hold the claims. I know, but I'm not talking about that. I'm talking about, okay, maybe it doesn't matter. I wasn't talking about the lien. I was still with this whole idea of seeking disorder. Are you saying that you could not have, when the case was going to be dismissed, that you could not have said, well, there's this other issue about the funds that the lawyers got by the bankruptcy, and the issue is that they have no right to that money because it's the IRS's money? Are you talking about the pro rata share argument, Your Honor? Are you asking about the pro rata share argument? No, I was earlier, but not now. Are you saying that you could not have said that you could not let them have these fees that they have? I mean, you could allow fees that they can get directly from the debtor, but that's neither here nor there, but you can't let them have this money that they now hold because it belongs to the IRS because no taxes were paid? Well, we did argue that at the hearing. We wanted to put something in the proposed order addressing the professional's retention of the funds, but again, that was addressed to the pro rata sharing, but then the court entered the dismissal order without that, addressing the disposition of the trust funds because the parties were unable to negotiate a form of a proposed order that did address the trust funds before the bankruptcy court entered the dismissal order. So the bankruptcy, the court just entered a standard dismissal order that dismissed the case. Then we filed the motion for disgorgement, which we could file after dismissal because it arose under the bankruptcy code, but after dismissal we could not bring our trust and lien claims because they were not brought under the bankruptcy code and they would have resulted in no distributions to creditors and were not related to administration of the bankruptcy. Okay, but could you have asked for disgorgement before it was dismissed on the basis that the professionals had no right to that money because the taxes hadn't been paid? Based on the trust theory or the lien theory? Right, but that doesn't mean that we had to in order to avoid those claims being precluded. That's why I said the definition, the test for race judicata just requires, first of all, the professionals have the burden and they have to show that we should have brought those trust and lien claims in before dismissal. They're the ones that have to prove that we should have brought those claims. Now even though we could have brought the trust claims before dismissal, we didn't have to because there's no requirement in bankruptcy. This was just a clean dismissal order, which really has little preclusive effect, if any. If it had been a confirmation order, which has a broad preclusive effect, then sure, that would bar inter-creditor claims, credit debtor claims, but the trust claim was a claim between the professionals and the government and it had no bearing on the bankruptcy and we weren't required to bring it during the bankruptcy. There's no requirement that a creditor has to bring every claim it has against another creditor during the bankruptcy. Well, it just seems odd to me that when you're dealing with attorneys fees that are generated during the bankruptcy that you wouldn't be expected to bring that argument before the bankruptcy judge. Maybe you're not. I've certainly taken too much of the time, so we'll hear from the other side unless there are further questions right now. No. Good morning. May it please the court, Jeffrey Garish on behalf of Schaefer and Weiner. I've had a lot of cases in my career that have the appearance of more complexity than is really involved and I know this court certainly has as well. There are a lot of complex components of all of this, but the issue, the fundamental issue is very simple and it's almost startling that the IRS has devoted a hundred pages of briefing on appeal to one element of race judicata. That's what this case is about and the only issue is could they have brought these claims in connection with the bankruptcy? That's the only issue and the answer is of course they could have. They could have brought the claims after it was dismissed. So you equate the word could with should? Honestly, Judge Bush, I don't think it makes much difference. The point is sometimes you see it could and sometimes you see it should. The point, I think it's really could they have done it and then the issue is if they could have, they should have. That's the essence of not being allowed to split a claim and this is a classic quintessential example of a party trying to split a claim or to put it differently, trying to get a second bite at the apple. They absolutely could have brought this both before and after the bankruptcy case was dismissed. And my friend just said something that I think is quite revealing. She said we weren't required to bring these claims before the dismissal. Of course they weren't. I agree with that, but the point is they could have and they even said that in their brief. It's in their reply brief. It seems to make a difference between the trust claim versus the lien claim. She says trust claims could have been brought, but lien claims couldn't have been. Yeah, and two things about that. Number one, that's a concession that the trust claim is barred by res judicata, flat out. And number two, with regard to the lien claim, I disagree. I think that also could have been. It could have been brought before the dismissal and it absolutely could have been reserved, which is the question I think Judge White was going after. And why do you say it could have been brought? What's the point that she's making that you're rebutting? I don't understand her point, to be honest, Your Honor. I didn't see anywhere in the briefing an argument that they couldn't bring the lien claim before the dismissal. All they've ever argued is they didn't know about it. They didn't know that these fee petitions were going to be filed. They didn't know that they would be objecting to fee petitions until after they was filed, but that's nonsense. They knew the professionals had been retained. They knew they were being paid. And they could have brought both the lien claim and the trust claim before it was dismissed. They certainly could have reserved the right to do that under Browning. And this is a very important point I want to make. Let me ask you something else about the facts. For the post, after the dismissal, the post-petition claim that was made, did that pertain to services that had all occurred pre-dismissal of the bankruptcy during the bankruptcy proceeding itself? Yes. Okay, so there were no services post-bankruptcy that were being petitioned for? Oh, no, I think there were. Okay, so it was both, kind of a straddling? Yes, in fact, our entire fees were not even awarded. There were fees awarded up to, I think, July 30, 2019, and the bankruptcy court found that after that point they shouldn't have continued to incur fees. This is another thing I think bears mentioning here. They've never denied that we earned this money. We didn't even, my clients didn't even recover all the fees that they earned, and they agreed that they earned them. And they're, again, trying to take this money away from professionals who didn't do anything wrong. I mean, they're not the ones that owe these taxes. These professionals got paid the fees that they earned, and not even all the fees at that. But getting back to, this is a point I want to make sure I emphasize, and I think this is what Judge White was getting at. They have never argued in this appeal, anywhere in their brief, that they could have brought or reserved these claims before dismissal. They've never argued that. They argued only that, their position is that they could not have brought these claims before dismissal. That's been their argument. I said in my brief, even if you grant that, they could have reserved the right to do that. They absolutely could have done that, and that's Browning. Browning specifically says that. Then they said in reply, A, that's not true, and B, actually we did. We did reserve the right to bring them. We told the bankruptcy judge that we were thinking about some other claims that we might file later. So I think it would be highly unfair to allow them, based on a statement in their reply, to completely change their theory yet again and say, actually we did reserve the right to bring these, because they never argued that. And they shouldn't be allowed to take advantage by changing their position in response to the argument I made that they never reserved the right to bring these claims, and they never said they did. But the other thing is, they could have... I don't understand the question. I'm sorry. I didn't reserve it, and I'm asking whether that is based on the difference between going after the debtor and going after the clients. They did say that they intended to try to recover the funds from my clients. They did say that. But they've never argued in this appeal that race judicata doesn't apply because of that. The only argument they've ever made is that they say the IRS could not have brought these claims before dismissal. That's the only argument they've made. And they argued they couldn't have brought them after dismissal, which is also wrong. The Drury v. Cumberland decision, which Judge Batchelder authored, specifically says that a bankruptcy court has comprehensive jurisdiction over a fee petition. Comprehensive meaning the judge can decide any claims or defenses that are brought before it. And that's part of the original jurisdiction of the bankruptcy. That's right in Drury v. Cumberland. And the IRS's response to that, again, is to say we didn't have to. And they even said this in their reply brief, and I'm quoting from page four. The government was not required to bring its trust and lien claims in the bankruptcy case before the dismissal order. I agree, but they could have. That's the whole point. But is that really the test, especially in bankruptcy? Because it would seem to me that there were all sorts of claims that could be brought in bankruptcy. And if the bankruptcy or the plan is confirmed, then maybe there are consequences. But if it isn't, are all those claims lost? Because they could have been brought? Well, certainly any claims regarding payment of fees to professionals, that is part of what the bankruptcy judge is doing. The judge entertained, ruled on, a petition for fees. The IRS actually objected to it. And the IRS also filed a motion for disgorgement. And then it says, even though we could have also argued our trust and lien claims, we didn't have to. But res judicata only asks whether you could have. But the judge didn't... The judge didn't say, this is the appropriate amount of fee and you can take it out of this fund. The judge just said, based on your work, these are the fees you're entitled to. And you're entitled to payment of the fees out of the funds. The judge did say that. The judge awarded payment of the fees out of the fund. And if the IRS had an objection to that, based on a trust or lien theory, it was required to bring it or else lose it under res judicata. Because the question is... Just give me the page number. Of the bankruptcy judge's... I'm sorry, judge, I don't have it handy. But I know it's in the briefing. And I could find it in the briefing, maybe. But I know that the bankruptcy judge said... It didn't just say, this is the amount that you're entitled to. It said it ordered the fees to be paid out of the estate to Schaefer & Weiner and also the Harmon Partners. That was... I'm sorry, out of the funds? Yes. I know you just said out of the estate. Out of the funds that they were holding? Yes, out of the escrowed funds. Yes, escrowed funds, sorry. And I apologize, I don't have the page for the bankruptcy court's order. But that's the point. Again, they could have brought this... I mean, we win in several different ways. They could have brought this after dismissal under Drury. The decision that Judge Batchelder authored. The bankruptcy court also had in-rem jurisdiction over the escrowed funds. That continued during the fee proceedings. And also had retained jurisdiction. Retained jurisdiction, and this is something we mentioned in our footnote 11. The In re Smith case says, in the interest of judicial economy where it's convenient to the litigants and the degree of difficulty of the issues is not too much, then the bankruptcy judge has jurisdiction under retained jurisdiction per In re Smith. So there's three different ways that the judge continued to have jurisdiction over these claims if the IRS wished to bring them, and that was all after dismissal. They could have brought it under... The judge had several jurisdictional bases to adjudicate the claim after the dismissal. And of course, as the court's questions have picked up on, they could have reserved their right to do this before dismissal. And they never did, and they've never argued that they did. No, and I don't think so, Your Honor. And this reminds me, I want to answer Judge Batchelor's question about the district court's comment on the disgorgement motion. The bankruptcy judge declined to exercise jurisdiction over the disgorgement motion because of what the judge perceived that was, which is essentially a discovery request. If they had a trust and lien claim, something that was different than what they were arguing in the disgorgement motion, we don't know whether the bankruptcy judge would have entertained it or not. Now, I will say this, and this is, Judge Batchelor, you asked how does it affect the things that the district judge had said, you're not entitled to this money. I think it means they weren't going to get paid, even if they had brought these trust and lien claims. They would have been unsuccessful, and they should have been unsuccessful. But I think it's likely that they would not have prevailed. But, again, that doesn't, if anything, that counsel's in favor of affirming the court's dismissal based on res judicata because it's a claim that by all appearances probably wouldn't have been successful that they're now trying to bring in a new lawsuit that's barred by res judicata. I mean, if it was a stronger claim, they would at least have a better argument in terms of raw justice that they've been deprived of this meritorious claim. But they haven't. They haven't been. And the district judge seemed to have agreed. That's how I take the district judge's point on that. But, again, this is a quintessential example of a party trying to get a second bite at the apple. They have conceded, even today in open court, that they could have brought the trust claim. That's a concession that they lose that, and I think they could have brought the lien claim as well. They certainly could have reserved it. Now I think I'm just repeating myself, but if the court has any questions, I'd be happy to try to answer them. I do not. Thank you. So you're saying that the bankruptcy court would have had jurisdiction over both claims? Yes. As grounds for objecting to the fee petition, they could have been brought, and the comprehensive original jurisdiction, original bankruptcy jurisdiction, encompasses the right to entertain those objections to the fee claim. That's Drury v. Cumberland. And retained jurisdiction under Inree Smith, which is in our footnote 11. Hopefully that answers your question, Your Honor. Yes, thank you. Okay, there seems to be some lack of clarity about the test, and I'd like to start with that because since we were only disputing one element of the test, I didn't really start with that, but I'd like to start with that now because I'd like to make absolutely clear that we don't have to show, or actually we don't have to show anything. They're the proponent of the defense. They have the burden of proof, and they have to show that the issue to be precluded should have been litigated. So the requirements on page 36 of our brief, we quote the Bittinger case by this court, and we go through the elements. And the third element is that an issue in the subsequent action which was litigated or which should have been litigated in the prior action. So, of course, you can't say it should have if it couldn't have. But just because it could have doesn't necessarily mean that it should have. And basically, should have basically means they have to show that we were required to bring. I think I understand that point. But what about his point was that regardless of whether it's should or could, that both the trust and the lien could be brought in the bankruptcy matter. What about the lien? I think you seem to be saying the lien couldn't have been brought, that claim. Before dismissal, correct. Before dismissal. And why is that? What is your reason for why that cannot be? Okay. Because of the automatic stay, simply. So the liens were pre-petition liens, and the funds were post-petition funds, and you cannot enforce a pre-petition lien against post-petition funds under the automatic stay. We're talking about after the judgment. We're talking about before the bankruptcy was dismissed. At that point, why couldn't the lien? That's when the automatic stay is in effect, Your Honor. But why didn't he ask to have it lifted? Well, first of all, for most of the bankruptcy, we did not know, contrary to what opposing counsel has said, that these fees were being paid. We did not get served with the applications in which they requested for the fees to be paid, because those were early motions in the case that did not get served to all the creditors. They're served to the U.S. trustee, and they're filed with the bankruptcy court. But we didn't know about these applications. And the monthly operating reports, which did show the payments in very sketchy line-item terms, were not served on us. So we don't go through the government or the IRS doesn't have time to comb through every monthly operating report of every debtor to see, well, are professionals being paid out of trust funds, which we would assume they wouldn't do that, because the trust funds belong to the government, so the professionals shouldn't be paying themselves out of them. So I'd also just like to go back to one more point. Before you do that, you said these are pre-petition claims that you couldn't get out of post-petition funds. But I'm confused by that, because I thought that these funds were post-petition, that they were monies generated during the bankruptcy that were given to the attorneys during the bankruptcy. Yes, Your Honor, the trust funds were. However, the actual liabilities that the IRS was seeking to collect, the liens, were securing pre-petition liabilities. Those were those ACS liabilities that CPS agreed to guarantee and secure, and that thereafter became liens on CPS's property. So the liens were pre-petition liens, and they could not be enforced during the bankruptcy under the automatic stay. So this has nothing to do with not paying or withholding on CPS's employees. It goes back to what APS did.  The trust claim seeks to recover the funds based on the trust imposed on those funds when net wages were paid. CPS's employees? Yes, Your Honor, the debtor. The debtor continued in operations during the bankruptcy. That's why it incurred trust funds. I see that my time... If you wanted to say whatever I interrupted you, go ahead and say it. Okay. I just want to draw the Court's attention to this point about Browning and reserving the claims. Browning does not require us to reserve our claims before the bankruptcy was dismissed. Browning is an exception to res judicata. So if all the other requirements of res judicata are met, then Browning allows the claimant to reserve their claims. And I just would like to make one point about 5900 Associates, which is the Derry case. That this case is not, that that case doesn't apply here because the trust and lien claims are not part of the original proceeding. They're claims under the Internal Revenue Code. And there is no retained jurisdiction for the trust and lien claims because the claims were not pending when the case was dismissed. Retained jurisdiction can only be for claims that are already pending. Otherwise, there would be no jurisdiction to retain. Thank you. Any other questions? No. No, but I request, Judge White, I would like to ask that we take a brief break at this point. And that is just fine. Thank you.